*1320 CLEVENGER, Circuit Judge,
concurring in part and concurring in the result.
I agree with my colleagues that the government failed to shoulder the burden assigned to it by State Farm, and that Treasury Regulation § 1.263A-11(e)(1)(B), as it applies to property temporarily withdrawn from service, is accordingly unlawful. But I do not share the majority’s view that this outcome also must derive from an irreconcilable incompatibility between I.R.C. § 263A’s avoided cost principle and the regulation’s policy of treating interest allocated to property withdrawn from service as an avoidable cost. The broad conclusion endorsed by the panel is unnecessary when this case can be resolved on narrower grounds.
I
There appears to be no dispute among the panel that the government has not articulated any rational explanation for many details of the regulation before us, from the regulation’s first proposal in the mid-'90s up to the current date. Such a failure makes the regulation procedurally unlawful. I would reverse on the grounds set forth in part V of the majority opinion, but would give the government another chance to explain and justify its view that the adjusted basis of property temporarily withdrawn from service can be taken into account in determining production expenses.
II
Regarding the majority’s Chevron review, I agree with its conclusion that section 263A(f)(4)(C) of the Tax Code leaves a sizeable “gap” concerning what is and is not to be considered a “production expenditure.” As per Chevron step one, this gap invites the government to promulgate regulations more fully defining this term.
Where I depart from the majority is in my conception of what exactly it means for an expense to be an “avoided cost.” In this appeal we are concerned with interest accumulating on a utility’s operating debt. All agree that, when the utility takes on an improvement project, it is only fair that some of the interest accumulated during the project be capitalized, along with the project’s direct costs, as “production expenditures.” A shorthand is to think of the utility borrowing money from itself to pay for the project. Both the “borrowed” principal and the accumulated interest are capitalized. So far, so good.
The “avoided cost” rubric is another shorthand for the same concept. It says, if the utility had not taken on the improvement project, then the money it spent on the project would have been available to pay down the operating debt. As a result, both the money spent and the interest that accumulated on that money (because the debt was not paid down) are charged to the project.
This appeal focuses on a subtle aspect of this regulatory approach. Say, as part of the hypothetical project, that the utility has to remove from service a plant that otherwise would have been running — generating electricity, employing workers, and generally creating value. Now that plant is non-operational, at least for the time it takes to complete the improvement. Is the plant’s conversion from operational to (temporarily) non-operational status a “cost” of the improvement project? Can it be charged as a “production expenditure”? How?
One vision of the associated-property rule in Treasury Regulation § 1.263A-11(e)(1)(B) is as an attempt to answer these questions. Yes, this approach says, the lost value associated with the withdrawal of property from service is a production expenditure that must be capital *1321 ized. But putting an actual number on the lost value presents administrative difficulties. Do we measure lost value in. terms of revenue generated? Workers employed? Electricity produced? Some combination of these? What about other, less tangible forms of value?
For convenience, one might propose to elide such an administratively-difficult assessment and simply assume that the lost value more or less equals the interest that accrued on the value wrapped up in the plant (i.e., the taxpayer’s basis) while the plant was inoperative. So, this approach says, the taxpayer is instructed to take whatever basis it has in the plant and compute the interest that accrued on that basis during the period of non-operation.
The majority is correct that fitting this approach into the “avoided cost” rubric requires adoption of a surprising fiction. If the interest accrued on the plant is to be thought of as an “avoided cost,” one must assume (counterfactually) that the taxpayer could have liquidated the plant and used the proceeds to pay down its operating debt. The majority views this fiction as such a departure from economic reality as to render the associated-property rule invalid. But, mindful that the avoided cost rule is in its entire concept a fiction, I am not convinced that its application here is so surprising as to merit overturning the regulation under step two of Chevron, if Treasury can properly explain its reasoning, which it has yet to do.
The “avoided cost” rule is full of surprising fictional assumptions. Take, for example, a utility instructed by regulators to make some token improvement to its plant or have the plant shut down. Assuming this modest improvement would not require the plant to be withdrawn from service, no party to this appeal would dispute that the improvement costs (including associated interest) would be capitalized according to the “avoided cost” principle. But in no real sense are these “avoided costs,” as no rational utility would embrace regulatory shutdown merely to avoid the cost of a token improvement. It seems to me no more or less strange to say that a utility might “avoid” the cost of a plant being temporarily inoperable by selling it. The avoided cost rule is one of theoretical possibility, not economic reality.
If we accept that there are real costs incurred in shutting down a property while improvements are made on it, such costs (assuming they can be quantified rationally) could have been avoided if funds had not been expended for the improvements. In reality, the cost of shutting down a property is no less “incurred” or “expended” than is the amount of money spent on the improvements. In other words, treating the cost of shutting down a plant temporarily while improvements are made as a “production expenditure” does not necessarily contradict the avoided cost rule that underlies section 263A. Indeed, I do not understand the majority to hold that the costs incurred in shutting down a property for improvements can never be treated as production expenditures. Instead, I read the majority to hold more pointedly that the adjusted basis of the property withdrawn from service cannot ever be treated as a production expenditure.
Further, it seems to me that the associated property rule might be separately justified as necessary to fully implement aspects of the tax regime that every party acknowledges as lawful. It is important to keep in mind that this dispute concerns only the use of basis in underlying property that has been removed from service. No one here disputes that the full basis of underlying property can and should be taken into account for interest capitalization where the property never went into service in the first place. For example, if a taxpayer acquires a factory, *1322 then improves it before bringing the factory online, there is no dispute that the taxpayer’s full basis in the factory (i.e., his purchase price, presumably) is taken into account in computing the amount of interest to be capitalized as an expense associated with acquiring the improved factory. In its briefing, the appellant acknowledged such an assessment as appi'o-priate, but characterized it as involving “purchased property” and not invoking the associated property rule at issue here, even though Treasury Regulation § 1.263A-11(e)(1)(B) on its face applies to property “that is not placed in service.” See Appellant Br. 19; see also Treas. Reg. § 1.263A — 1 (e)(2)(i) (cited by appellant as the “purchased property rule”). Irrespective of how it is couched, the larger point is this: a taxpayer’s basis in property into which improvements are incorporated does, in some cases, affect the amount of interest he must capitalize as a cost of that improvement.
Such is undisputed. But, says the government, it creates an easy opportunity for tax evasion. A clever taxpayer, one who seeks to acquire the same improved factory just described but with smaller tax consequences, could structure his operations so that he falls outside the purchased property rule. Rather than buy a factory and then immediately set to work improving it, he puts the factory into service for some minimal period of time. His basis depreciates accordingly, albeit minimally. Then he takes the factory out of service and starts improving it. Because he now falls outside the strict text of the purchased property rule, his basis in the factory no longer contributes to the amount of interest he must capitalize, and so his tax burden drops substantially — even though the taxpayer’s activities had no economically meaningful purpose other than tax avoidance.
The associated-property rule would plug this regulatory gap; the majority’s reasoning reopens it. To me that is a step that should be taken with caution, and is neither fully justified nor necessary here.
Finally, I note that in this case the government has had substantial difficulty coming to grips with its own arguments. It apparently convinced the Court of Federal Claims that the associated property rule could be justified as an attempt to capture the opportunity costs associated with withdrawing property from service, even though it failed to explain as much in promulgating its rule. But its appellate briefing was, to say the least, opaque. And at oral argument, the government specifically rejected the “opportunity costs” approach, only to reverse its position in a post-argument letter. A litigant can, of course, be held to the consequences of its own failure to cogently present its case, particularly where that litigant is the federal government. But in such circumstances, the best approach is to tailor those consequences to the facts of the case.
The outcome of this case can and should extend from State Farm. The government’s failure to justify its regulation ab initio left open the question of whether the avoided cost principle necessarily undermines any rationale that could justify treating an adjusted basis of property withdrawn from service for improvement as a production expenditure, for purposes of calculating interest to be capitalized. Such reaffirms my conclusion that this appeal does not present an appropriate vehicle for deciding the Chevron question. It is therefore a more discreet approach to leave that question aside. The approach taken by the majority goes too far in that it creates a binding rule (at least in this circuit) that the government can never re-promulgate its associated-property rule for property temporarily withdrawn from ser *1323 vice, no matter how well-formed its reasoning. I therefore concur in the result, and in Part V, of the majority’s opinion, but otherwise respectfully dissent.